IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUEBEN OLVEDA, *et al.*,

      Plaintiffs,

                                                                                                        No. 1:20-cv-00029-KRS-JHR

v.

CIBOLA COUNTY BOARD OF
COMMISSIONERS, *et al.*,

      Defendants

## ORDER DENYING MOTION TO DISMISS

**THIS MATTER** comes before the Court on Defendants' motion to dismiss Count V of Plaintiffs' amended complaint (Doc. 6), a state-law claim for alleged violation of the New Mexico Inspection of Public Records Act ("IPRA"), N.M. Stat. Ann. §§ 14-2-1 *et seq*. Defendants contend that although they did not initially produce all materials in their possession responsive to Plaintiffs' request for public records, they did so before Plaintiffs filed this lawsuit by complying with a subpoena in a different lawsuit. Under New Mexico law, Defendants say, no cause of action under the IPRA exists. Plaintiffs disagree and assert their pleading states a plausible cause of action. The Court has reviewed the parties' submissions and examined the four corners of the amended complaint. Having done so, the Court denies Defendants' motion.

### BACKGROUND

In June 2017, Ramon Lorenzo escaped from jail, and a manhunt lead by the Ciblola County Sheriff, Tony Mace, ensued. (Doc. 1-2, Am. Compl., ¶¶14-15). Other state and local agencies from across New Mexico including the State Police participated. (*Id.*). Although many more facts are at play, as series of tips ultimately led authorities to the Valencia Village Subdivision in Grants, New Mexico. (*Id.* at ¶¶ 15-35).

Once there, the Cibola County Special Services Unit, a "specialized combat unit" created by Cibola County Undersheriff Michael Munk and designed to cooperate with other agencies in apprehending "hard core gang members," began searching residences to find Lorenzo. (*Id.* at ¶ 37). Members of the SSU wear tactical uniforms and are heavily armed with personal weapons, urban rifles, 4X scopes, and sawed-off shotguns. (*Id.*). Driving in what looked like a tank, a Lenco Bearcat, authorities descended on Lot #9 of the subdivision and ordered residents out of the home via the Bearcat's intercom system. (*Id.* at ¶ 65). At the time Ruben and his family were celebrating his birthday and doing nothing unlawful. (*Id.* at ¶ 86). As Ruben and family members exited at gunpoint, they were handcuffed and detained in police vehicles. (*Id.* at ¶¶91-332). Despite their military-style sweeps ordering residents from their homes to find the fugitive, the authorities did not find Lorenzo. (*Id.* at ¶ 323).

On June 21, 2017, Plaintiff's made a public records request to the Cibola County Sheriff's Office for "all video and audio recordings and any police reports related to the detention or questioning of any person at Valencia Village, Lot #9 or anywhere else in Valencia Village on June 14, 2017." (*Id.* at ¶ 331) (internal quotation marks omitted). The County responded that it needed until July 3, 2017 to respond. (*Id.* at 332). "[T]he County's chief deputy clerk eventually sent a total of 3 statements from 3 officers concerning Plaintiffs' request for records." (*Id.* at ¶334). Accompanying these comments was a letter from Sheriff Mace indicating that aside from the reports, "there are neither photos nor video recordings" and "the deputies on scene did not interview anybody nor speak to anybody they never made entry into the residence they were perimeter security outside the residence" and "were only assisting the New Mexico State Police Tact Team." (*Id.*).

On February 8, 2018, Plaintiffs served the County with a subpoena in a separate lawsuit in state court and on March 27, 2018 "received responsive police reports that were never produced in response to their public requests." (*Id.* at ¶¶335-36). From this production, Plaintiffs learned Cibola County Undersheriff Munk and Deputy Kemp "caused the invasion of Spaces #8 and #9"; Cibola County law enforcement headed the raid of Ruben's residence; "entered Rueben's home without a warrant"; detained members of Ruben's family in County vehicles; interrogated family members and "ran them through NCIC"; and pointed guns at "family members including children." (*Id.* at ¶¶337-342). To date, Plaintiffs claim, they "have not received any supplemental response from Sheriff Mace or any County records custodian to their IPRA request." (*Id.* at 343).

On November 9, 2018, Plaintiffs sued the Cibola County Board of Commissioners and Sheriff Mace for violations of the New Mexico Constitution and Tort Claims Act. (Doc. 1-3, Compl.). On January 9, 2020, Plaintiffs amended their complaint on November 8, 2020 to include, *inter alia*, claims under the federal Constitution. Defendants removed the matter to this Court on January 10, 2020. (Doc. 1). As is relevant to this motion, Count V alleges the Cibola County Sheriff's Office and Sheriff Mace violated IPRA by providing an incomplete or inadequate response to their request. (Doc. 1-1, ¶391). According to the amend complaint, "Defendants did not produce . . .Sheriff Lieutenant Hall's police report, Special Deputy Bohite's police report, or Special Deputy Sabroe's police report." (*Id.* at ¶392). In fact, Plaintiff allege, "Sheriff Tony Mace affirmatively represented to Plaintiffs that no CCSO officer entered a private residence or land or spoke with or interviewed anyone in Valencia Village" and accuse Mace of lying. (*Id.* at ¶¶393-94). Plaintiffs remain unsure "whether other public records are being withheld." (*Id.* at ¶395).

**STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a pleading within its four corners. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint is sufficient when it "allege[s] facts that, if true, state a claim to relief that is plausible on its face." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2014) (internal quotation marks and citation omitted). "Plausibility" asks whether, under the substantive law that governs the claims alleged, the plaintiff has pleaded facts that "raise a right to relief above the speculative level." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In determining if a complaint survives a motion to dismiss, the Court must assume the truth of the facts in the pleading, take those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law. *See Mayfield*, 826 F.3d at 1255.

**DISCUSSION**

The IPRA entitles "all persons . . . to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." N.M. Stat. Ann. § 14-2-5 (1993). Thus, any person may inspect public records by submitting a written request to a government records "custodian." *Id*. § 14-2-8(A). Upon receipt of the written request, the custodian typically "permit[s] the inspection [of the records] immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request." *Id*. § 14-2-8(D). If this period elapses without either production of the documents or a determination that the request is excessively burdensome or broad, the IPRA deems the request denied. *Id*. § 14-2-11(A). But "[i]f a custodian determines that a written request is excessively

burdensome or broad, an additional reasonable period of time shall be allowed to comply with the request" provided the custodian notifies the requester within the initial fifteen-day period. *Id*. § 14-2-10. This process may take substantial time where hundreds or thousands of documents are at issue. In any event, the requester "may deem [her] request denied and may pursue the remedies available pursuant to the [IPRA] if the custodian does not permit the records to be inspected in a reasonable period of time." *Id*.

The IPRA affords damages for, *inter alia*, a public body's failure "to permit inspection of all nonexempt responsive records." *Britton v. Office of the AG of N.M.*, 433 P.3d 320, 333 (2019). In this case, Plaintiffs' claim, in sum, is that the Sheriff's Office did not provide them many documents that fell within their written request. They point to a later more voluminous production by the County pursuant to a subpoena in a related civil case in state court where Plaintiffs demanded the same documents they initially requested via the IPRA. Defendants concede the initial response to the IPRA request was deficient, but claim that before Plaintiffs filed the instant suit, Defendants had produced all relevant documents and thus there was nothing to enforce under the IPRA.

In *Derringer v. State*, 68 P.3d 961, 962 (NM Ct. App. 2003), the New Mexico Court of Appeals considered "whether statutory damages . . . may be awarded in a later action brought after the public body has complied with the Act." The court concluded "by its plain language, the . . . Act does not" contemplate such damages. *Id.* at 965. In reaching that conclusion, the court reasoned

> The procedure for denied requests . . . plainly states that a custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request, "is subject to an action to enforce the provisions of the . . . Act and the requester may be awarded damages." Section 14-2-11(C). The language, "is subject to an action to enforce the provision," is not independent from the rest of the sentence, nor is it set off by a comma or a semicolon, so it is not a separate

> clause or idea. Plainly, this provision provides a citizen with the means to enforce the Act if the public body does not comply. Conversely, then, once the custodian complies, the public body is no longer subject to an enforcement action. Contrary to Plaintiff's assertion that he should be awarded damages even if he is not bringing an action to force compliance with the Act, it is only in the event that a court action is brought to enforce the Act that a plaintiff is awarded mandatory costs, fees, and damages, and then only if the plaintiff is successful in that action. *See* § 14-2-12(D).
>
> By requiring that each public body have a public records custodian, *see* NMSA 1978, § 14-2-7 (2001), and requiring compliance immediately, but no later than fifteen days, *see* NMSA 1978, § 14-2-8(D) (1993), the legislature's focus was to provide prompt compliance. The sections at issue, Sections 14-2-11(C) and -12, are titled "Procedure for denied requests" and "Enforcement," both of which are necessary to achieve the legislative purpose of freely allowed, prompt compliance. Plaintiff's claim was not brought to enforce compliance with the Act because the Board had been in compliance for nearly a year when the complaint was filed.

*Id.*

Taking the context of the case, the statute, and guidance from the New Mexico Court of Appeals combined with the federal pleading standard, Plaintiffs state a claim for relief only if, drawing all reasonable inferences in their favor, the complaint avers that the Cibola County Sheriff's Office, through its custodian of records, had not provided all the documents to which Plaintiffs were entitled at the time the action was filed. The pleading meets this standard.

According to the amended complaint, on June 21, 2017, Plaintiffs made a public records request to the Cibola County Sheriff's Office. On June 22, 2017, the Cibola County "recording and filing clerk" responded and informed Plaintiffs that the "voluminous" information requested necessitated until July 3, 2017 to produce the records. The Chief Deputy Clerk ultimately produced three statements from three officers along with a letter from the Sheriff Mace. After Plaintiffs served a subpoena for the same records in a separate lawsuit and received many more documents, they realized the Sheriff's Office's response to their IPRA request was incomplete. At the time of filing the amended complaint on January 8, 2020, Plaintiffs had not received a

supplement from the Sheriff or the County record's custodian.  In fact, Plaintiffs aver, they "still do not know whether other public records are being withheld."

These facts state a plausible cause of action—Plaintiffs made a written request under the Act, and the custodian of records failed to produce all responsive documents. At the time of lawsuit and to date, the custodian of records has still not produced all records.  Nothing in the case law, the IPRA, and Federal Rule of Civil Procedure 8 require additional allegations. Defendants ask the Court to look behind these allegations and conclude that because the County, in their view, fully responded to a subpoena in a separate lawsuit, the Sheriff's Office and Sheriff Mace, the only named defendants in Count V, complied with the IPRA..  Although the argument has some appeal, the Court rejects it for two reasons.

First, Defendants necessarily assume that the individual that complied with the subpoena on behalf of the County is the same custodian of records for the Cibola County Sheriff's Office designated pursuant to IPRA.  *See Derringer*, 68 P.3d at 964 (explaining that a public body complies with the IPRA through its designated custodian of records).  Although with evidence on a motion for summary judgment this assumption could well bear out, the Court is limited to the operative complaint here.  And the amended complaint specifically alleges that the records custodian did not produce all responsive public records.  As *Derringer* explains, it is only once "the custodian complies," that "the public body is no longer subject to an enforcement action." *Id.*  Because in this case Plaintiffs allege the record custodian had not produced all responsive public records at the time they initiated litigation, they state a claim for relief.

Second, even if the Court could somehow conclude the County complied with the subpoena through its designated IPRA records custodian, the Sheriff's Office could still be liable if the County's response to the subpoena was not *itself* complete.  In other words, Defendants

assume full compliance with IPRA from the County's production of additional documents in response to the subpoena. But the amended complaint does not support the claim that the County's production represents the full universe of records responsive to Plaintiffs' IPRA request. Instead, the pleading alleges that because the records custodian never supplemented the response to the IPRA request, Plaintiffs cannot be sure they received all documents to which they were entitled. Taking all inferences in Plaintiffs' favor, the Court cannot conclude as a matter of law that Defendants complied with the IPRA.

## CONCLUSION

For the reasons above, the Court determines that Plaintiffs state a viable cause of action in Count V of their amended complaint. Despite the fact that the County responded to a subpoena in a separate lawsuit in state court with documents responsive to Plaintiffs' IPRA request, the allegations do not establish as a matter of law that, prior to filing the instant action, the records custodian for the Cibola County Sheriff's Office turned over all documents to which Plaintiffs were entitled.

**IT IS, THEREFORE, ORDERED** that Defendants' motion to dismiss (Doc. 6) is **DENIED**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent